NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Dean W. Schoburg,<br><br>Plaintiff,<br><br>v.<br><br>Dow Jones & Company, et al.,<br><br>Defendants. | Civ. No. 11-3410<br><br>Opinion |

THOMPSON, U.S.D.J.

This matter comes before the Court on the motion of Defendant Dow Jones & Company (hereinafter, "Defendant") for summary judgment. (Doc. No. 42). Plaintiff Dean Schoburg (hereinafter, "Plaintiff") has not filed any opposition.[1] The Court has issued the Opinion below based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the motion is granted and judgment is entered in Defendant's favor.

BACKGROUND

**1. Procedural History**

On June 13, 2011, Plaintiff filed a *pro se* Complaint against Defendant and others over the termination of his employment. (Doc. No. 1). The only two claims remaining are age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 623, 631 (hereinafter, "the ADEA") and race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (hereinafter, "Title VII"). (Doc. Nos. 1 and 15). On February 15, 2012, Defendant moved to dismiss the Amended Complaint, arguing that

---

[1] However, the Court has received a copy of a notice sent by Defendant to Plaintiff on February 7, 2014 alerting him of his failure to file an opposition brief.

1

Plaintiff failed to file his discrimination claims within 90 days of receipt of his Right-to-Sue letter from the EEOC.  On March 27, 2012, the Court granted the motion to dismiss.  (Doc. No. 15).  Plaintiff appealed the dismissal of his Title VII and ADEA claims, claiming that he incorrectly stated the date he received the Right-to-Sue letter.  (Doc. No. 23).  The Third Circuit remanded the case to allow for discovery as to whether Plaintiff's initial Complaint was actually timely.  (Doc. No. 25).

**2. Factual Background**

Plaintiff began working as a Tape Editor in 1994 and was later promoted to Radio Anchor at the age of fifty six.  (Doc. No. 42, Ex. A, Plaintiff's Deposition Transcript).  Plaintiff was tasked with writing short business news summaries that were then broadcast by radio stations.  (*Id*.).

In October 2008, Defendant altered Plaintiff's work assignment.  (Doc. No. 5 at 2).  Plaintiff refused to take the new work assignment and his employment was terminated.  (Doc. No. 42 at 10).  Defendant contends that this move to a new position was the result of poor work performance and gave the following infractions as proof of poor performance: (1) Plaintiff received a warning letter on October 5, 2005 for missing two separate reports; (2) Plaintiff was late for a report in January 2008; (3) Plaintiff missed a report in its entirety on February 12, 2008; (4) Plaintiff received a written warning for arriving late for a report on May 22, 2008; and (5) Plaintiff received another written warning for two issues regarding incorrect information in his reports on October 13, 2008.  (*See* Doc. No. 42 at 5-8).  In one of these reporting errors, Plaintiff stated that the Dow Jones Industrial Average had made its biggest drop in 17 years, when the actual number was 7.  (Doc. No. 42, Ex. A, Plaintiff's Deposition at 69:9-69:22).  Plaintiff also reported that the Dow Jones Industrial Average was below the eight hundred level, when it was actually below the eight thousand level.  (*Id*. at 69:18-69:22).   In his deposition,

Plaintiff stated that Defendant had the right to terminate him for some of his errors. (*Id*. at 70:18-70:20).

In his deposition, Plaintiff agreed that his title, essential duties, salary, and hours at the new position would have remained essentially the same. (*Id*. at 86:16-87:1). Plaintiff also admitted that this change was, at least partially, a result of his recent job performance. (*Id*. at 84:6-84:18).

When Plaintiff was alerted to the change in work assignment, he told his employer that he would refuse the assignment. (*Id*. at 85: 20-85:24). However, Plaintiff believed he could refuse the assignment without being fired. (*Id*. at 85: 20-85:24). On October 29, 2008, another employee of Defendant met with Plaintiff to confirm that he was starting the new working assignment. (*Id.* at 93:14-93:21). However, Plaintiff reiterated his refusal. (*Id*. at 93:14-21). Later that day, Plaintiff received an email informing him that his employment would end in one week because he refused the new assignment. (*Id*. at 91:18-25). Plaintiff made no subsequent effort to regain his position or accept the new position. (*See id*. at 95:4-95:10). Plaintiff, a 69-year-old man, brought claims under the ADEA and Title VII on the grounds that he was discriminated against due to his age and race, respectively.

DISCUSSION

*1. Legal Standard*

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the

underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

   *2. Analysis*

The Court will first analyze whether Plaintiff's ADEA and Title VII claims each present a *prima facie* case of discrimination before examining whether Defendant's actions were discriminatory or pretextual.

   **i. Prima Facie**

      *a. ADEA*

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is also unlawful for the employer to "limit, segregate, or classify" employees in a way that would "deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." *Id.* § 623(a)(2).

Here, Plaintiff provides no direct evidence that he was fired due to his age. If a plaintiff is unable to produce direct evidence of discrimination, he may proceed under the shifting burdens analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). "Under *McDonnell Douglas,* the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009); *Potence v. Hazleton Area Sch. Dist.,* 357 F.3d 366, 370 (3d Cir. 2004).

"Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 690. If the employer identifies a legitimate reason, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095 n. 4 (3d Cir. 1995). At all times the burden of persuasion rests with the plaintiff. *Id.*

Here, Plaintiff cannot establish a *prima facie* case under the ADEA because he suffered no adverse employment action. To qualify as an adverse employment action, the employment change must negatively affect the pay, benefits, hours, reporting relationship, or privileges of employment. 29 U.S.C. § 623(a)(1); *see also Grande v. State Farm Mutual Automobile Ins. Co.*, 83 F. Supp. 2d 559, 562-63 (E.D. P.A. 2000) (finding no adverse decision because transfer was not a "dead-end job"). The relevant adverse employment decision here is the change in work assignment, the refusal of which led to his termination. However, Plaintiff stated in deposition

that his title, essential duties, salary, and hours would have remained essentially the same in the new position.  (*Id*. at 86:16-87:1).

Similarly, Plaintiff cannot show that this new assignment amounted to a constructive discharge.  *See, e.g., Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1161-62 (3d Cir. 1993) (conduct complained of must "have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign"); *Cherchi v. Mobil Oil Corp.*, 693 F. Supp. 156, 163 (D.N.J. 1988) (a move to a lower position with less supervisory duty does not constitute a constructive discharge when salary remains the same).

Taking the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff provided inadequate evidence upon which a reasonable jury could find an adverse employment action.  Therefore, Plaintiff fails to present a *prima facie* claim under the ADEA.

      b.  *Title VII*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  The analysis of a Title VII action with no direct evidence of discrimination also follows the *McDonnell Douglas* burden-shifting framework.  "First, the plaintiff must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) circumstances exist that give rise to an inference of unlawful discrimination."  *Pagan v. Holder*, 741 F. Supp. 2d 687, 695-96 (D.N.J. 2010)(citations omitted).  "Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory action."  *Id*.

6

(citations omitted). "Once the defendant does this, then plaintiff must present evidence that the proffered reason is pretextual." *Id*.

Here, Plaintiff provides no direct evidence of racial discrimination and fails to show an adverse employment decision.[2]  *See Hussein v. Genuardi's Family Markets*, 2002 WL 56248 (E.D. Pa. Jan. 15, 2002) ("Plaintiff was provided essentially the *same* job with the *same* responsibilities at the *same* pay at this new location.  There is no evidence that this new location was particularly inconvenient for or placed a burden on Plaintiff . . . an essentially lateral transfer such as this does not equal an adverse employment action."); *Cuffee v. Dover Wipes Co.*, 334 F. Supp. 2d 565 (D. Del. 2004) (involuntary transfer to different position with "reduced role" and fewer responsibilities could not meet objective standard for constructive discharge under Title VII; although circumstances were frustrating and stressful, employee failed to establish conditions were so abhorrent that reasonable person would have resigned after just one day in new position).  Accordingly, Plaintiff's Title VII claim fails.

## ii. Non-Discriminatory Reason

If Plaintiff had made a *prima facie* claim of either age or race discrimination, the burden would have shifted to Defendant to "identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F. 3d at 690.  The record reveals several justifications for the position change.  Most notably, Plaintiff made several on-air reporting errors and missed or arrived late for several reports.  (Doc. No. 42, Ex. A, Plaintiff's Deposition at 70:18-70:20).  Defendant also contends that the move was to a less stressful position where any mistakes could be minimized.  (*Id.* at 70:86).[3]

---

[2] "[C]omplementary provisions of Title VII and the ADEA [are construed] consistently." *Monce v. City of San Diego*, 895 F.2d 560, 561 (9th Cir. 1990).
[3] The actual firing allegedly stemmed from Plaintiff's refusal to accept a new assignment.

7

Since Defendant identified a legitimate non-discriminatory reason, Plaintiff must demonstrate that the reasons for his termination were actually pretext for discrimination. *Smith*, 589 F.3d at 690. An employee's disagreement with a personnel decision does not establish pretext. *Mercado v. Donahoe*, 487 F. App'x 15, 19 (3d Cir. 2012); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 825-27 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."). Therefore, "our inquiry must concern pretext, and not an independent assessment of how we might evaluate and treat a loyal employee." *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988).

Plaintiff admitted that the change in assignment was actually an attempt to keep him employed at the company after his various mistakes. (Doc. No. 42, Ex. A, Plaintiff's Deposition at 103:17-19); *see also* (*Id.* at 84:6-84:18) (Plaintiff stated that move was designed to keep him "out of the crosshairs" of Ms. Abramson, who was angry over Plaintiff's recent mistakes). Plaintiff also admits that the change in work assignment did not violate the Collective Bargaining Agreement and that he knew of no younger or non-minority employees who kept a position after refusing a work assignment. *See* (*Id.* at 109:25-110:2). Taking the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff cannot show pretext.

## CONCLUSION

For the reasons set forth above, the motion (Doc. No. 42) is granted.

*/s/ Anne E. Thompson*
Date: 3/4/14                                                    ANNE E. THOMPSON, U.S.D.J.